IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JESSIKA A. MAZARIEGOS                                              PLAINTIFF

    v.                    Civil No. 2:20-cv-02147-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,[1]
Social Security Administration                                    DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jessika A. Mazariegos, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her applications for benefits on December 4, 2017, alleging disability beginning November 26, 2016, due to a back injury, arthritis, diabetes, carpal tunnel syndrome, high blood pressure, and neuropathy. (ECF No. 14-2, p. 16; ECF No. 14-5, pp. 2, 9; ECF No. 14-6, p. 3). Plaintiff was 37 years old on her alleged disability onset date, had a high school education, and was unable to perform past relevant work. (ECF No. 14-2, pp. 23-24). The Commissioner denied her applications initially on April 11, 2018, and upon reconsideration on May 31, 2018.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

(ECF No. 14-2, pp. 16; ECF No. 14-4, pp. 1, 5, 15, 17). At the Plaintiff's request, an Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, held an administrative hearing on July 11, 2019. (ECF No. 14-2, pp. 37-52). Plaintiff was present and represented by counsel. *Id*., p. 38. An interpreter for Plaintiff also appeared at the hearing. *Id*.

On August 2, 2019, the ALJ concluded that Plaintiff's impairments of diabetes mellitus, disorder of the back, and carpal tunnel syndrome were severe, but concluded they did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (ECF No. 14-2, pp. 18-19). He then found Plaintiff capable of performing sedentary work, except that she can occasionally climb, balance, crawl, kneel, stoop, and crouch. *Id*., pp. 20-23. With the assistance of a vocational expert ("VE"), the ALJ found the Plaintiff could perform work as a document preparer, printed circuit board inspector, and toy stuffing machine operator. *Id*., pp. 24-25.

The Appeals Council denied Plaintiff's request for review on July 11, 2020. (ECF No. 14-2, pp. 2-9). Plaintiff then filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 19, 24), and the case is now ready for decision.

## II.   Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. Because Plaintiff's appeal concerns whether her back pain, diabetes mellitus, and neuropathy prevent her from sedentary work on a regular and sustained basis, the undersigned will only recount the evidence relevant to her claims.

In September 2016, Plaintiff was scheduled for pain injections to treat her chronic low back pain and degenerative disc disease of the lumbar spine. (ECF No. 14-7, pp. 113-116). In October

2016, Plaintiff reported uncontrolled glucose and expressed a desire to get her diabetes under better control. *Id*., pp. 103-113. She reported episodes of chest pain and her EKG was described as abnormal. *Id*., pp. 100-103. In November 2016, the month of her alleged disability onset date, Plaintiff continued to complain of recurrent episodes of chest pain with associated radiating pain to the left arm, dyspnea and diaphoresis, and dyspnea with exertion. *Id*., p. 97. Plaintiff received lumbar epidural steroid injections at L5-S1 in December 2016 and January 2017. *Id*., pp. 84-85, 87-88. She was advised to strictly control her diabetes. *Id*., p. 86.

By the end of January 2017, Plaintiff had received three lumbar epidural steroid injections and reported that her pain was resolved so long as she did not stand for a long time or work in the yard. (ECF No. 14-7, pp. 78-80). In February 2017, Plaintiff attended several physical therapy sessions and exhibited a reduction in pain from 10/10 with increased activity to 5/10 in the L2-3 area. *Id*., pp. 71-78. In April 2017, Plaintiff was assessed for HNP at the left L5-S1, thoracic facet joint syndrome, and myofascial pain dysfunction syndrome. *Id*., pp. 59-63. She was prescribed Valium for spasms or discomfort, and Neurontin was discontinued. *Id*. In May 2017, an MRI showed mild thoracic spondylosis without significant spinal canal or neural foraminal stenosis and no thoracic compression deformity or cord signal abnormality. *Id*., p. 53. Plaintiff also continued physical therapy to address mid-to-low back pain with weakness, instability, and decreased flexibility. *Id*., pp. 46-51. She exhibited a good response to treatment. *Id*.

In June 2017, Plaintiff reported increased paresthesia in her feet, and the Neurontin dosage was increased. (ECF No. 14-7, pp. 43-46). In July and August 2017, Plaintiff reported back pain when she was active and that she experienced negative side effects from Neurontin. *Id*., pp. 33-40. She continued physical therapy and responded to treatment with improved mobility. *Id*., p. 57). In September 2017, Plaintiff's A1C was consistently at target such that she could stop insulin

but would continue Metformin. *Id.*, pp. 30-33. She also exhibited bilateral ganglion cysts with worsening pain that limited her range of motion in the right wrist, for which she was referred to an orthopedic surgeon. *Id.*

In October 2017, Plaintiff was given a splint to wear at night to treat right carpal tunnel syndrome. (ECF No. 14-7, pp. 25). In December 2017, Plaintiff underwent a right carpal tunnel release surgery. *Id.*, p. 15. She reported that her pain had significantly improved, and her paresthesia was almost completely resolved. *Id.*, p. 11. In January 2018, Plaintiff reported that she was doing well overall. (ECF No. 14-8, pp. 72-73).

In February 2018, Plaintiff stated in a function report that her pain increased when lifting, carrying, and standing or sitting for too long. (ECF No. 14-6, pp. 14-21). She also reported that she could shop in stores weekly, cook light meals for herself and her family daily, care for her pet and complete light housework with help, had difficulty putting on shoes, but she had no other problems with personal care. *Id.* She could drive a car and go out independently, including driving her son to and from school daily. *Id.* Plaintiff's hobbies included attending church weekly, reading three times a week, and going to dinners with family twice a week. *Id.* She did not indicate any problems with reaching or using her hands, but she reported that her pain affected her ability to lift, stand, walk, sit, climb stairs, kneel, squat, bend, and concentrate. *Id.*

In Plaintiff's pain questionnaire completed in February 2018, she stated she could stand, walk, or sit just 25 minutes before pain in her lower back and legs occurred. (ECF No. 14-6, pp. 35-36). She reported that her pain would last all day if she did not take her medication. *Id.* Walking, sitting, and lifting exacerbated her pain, and lying on her back alleviated it. *Id.* Plaintiff indicated that her diabetes, carpal tunnel, and some migraines also impacted her pain. *Id.*

4

In March 2018, Plaintiff continued Metformin and Novolog on a sliding scale for diabetes. (ECF No. 14-8, pp. 66-70). In April 2018, she continued physical therapy for low back pain, right leg pain, and numbness in the foot. *Id*., pp. 53-59. By May 2018, Plaintiff reported that her home exercise program relieved her leg pain, and tenderness in the paraspinal region was much decreased following treatment. *Id*., pp. 51-52.

In April 2018, non-examining state agency physician consultant, Denise Greenwood, M.D., assessed that Plaintiff's medical evidence of record supported a light RFC with additional restrictions. (ECF No. 14-3, pp. 29-30, 40-41). Explaining her findings, Dr. Greenwood noted Plaintiff's history of diabetes and hypertension, managed with medication; diagnoses of peripheral neuropathy and peripheral angiopathy; carpal tunnel syndrome and bilateral ganglion cysts, treated with right carpal tunnel release; complaints of knee pain with an x-ray showing minimal hypertrophic spurring, but essentially within normal limits; and activities of daily living only somewhat limited by her conditions. *Id*.

In May 2018, non-examining state agency physician consultant, Dan Gardner, M.D., affirmed Dr. Greenwood's assessment of a light RFC with additional restrictions. (ECF No. 14-3, pp. 53-54, 66-67). Dr. Gardner considered additional medical evidence showing treatment for pain in Plaintiff's right knee. *Id*. Plaintiff received a pain injection, and an x-ray of the right knee was considered negative other than a small spur off the medial plateau. *Id*.

In November 2018, Plaintiff was assessed for chronic fatigue, diabetes, mixed hyperlipidemia, peripheral angiopathy, hypertension, insomnia, chronic back pain with sciatica, and stress/adjustment reaction. (ECF No. 14-9, pp. 94-97, 107-120). She also reported constant low back pain that radiated to her left leg. *Id*., pp. 2-8. Explaining that her left lower extremity pain had been present for three years but had been getting progressively worse, Plaintiff reported

that multiple treatment modalities provided no significant lasting effects. *Id*. She reported her pain increased while sitting and walking. *Id*. The exam showed tenderness at the lumbar spine and bilateral paraspinous lumbar muscle. *Id*. As the treating provider concluded that Plaintiff would not get better with non-surgical treatment, Plaintiff was scheduled for a fusion secondary to diffuse disc bulge involving central disc protrusion and to weakening of the posterior longitudinal ligament. *Id*. Following the surgery on December 18, 2018, Plaintiff was discharged with prescriptions for Norco, Flexeril, and Lopressor and encouraged to walk. (ECF No. 14-9, pp. 9-33).

During her January 2019 post-surgery follow-ups, Plaintiff walked without an assistive device but with a slight limp. (ECF No. 14-9, p. 34). She denied low back pain but reported lower left leg numbness. *Id*. She was instructed to increase her activities gradually. *Id*. In February 2019, Plaintiff's back was reportedly better, but her diabetes and neuropathy were poorly controlled. *Id*., pp. 104-106, 121-122. By April 2019, Plaintiff reported some back pain, but it was not the same pain she had before her surgery. (ECF No. 14-10, pp. 32-36). She complained of a crawling sensation in her left lower leg, and the exam showed decreased sensation to dull stimuli along the left lateral lower leg. *Id*. The CT scans, however, showed that the hardware was in good position at L5-S1 with no evidence of hardware failure. *Id*. Her surgeon advised that Plaintiff may return to work with no lifting greater than 30 pounds, but she could gradually increase lifting as tolerated. She was advised to progressively increase her walking and may start a slow jog. *Id*., p. 32.

### III.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers a claimant's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV. Discussion

Plaintiff raises two issues on appeal: (1) whether substantial evidence supports the ALJ's RFC determination, and (2) whether substantial evidence supports the ALJ's step five determination. A thorough review of the record shows that the ALJ's decision to deny benefits is supported by substantial evidence.

### A. RFC Finding

In her first issue, Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Consequently, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

8

function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The evidence before the Court supports the ALJ's determination of the RFC.  In his decision, the ALJ considered the treatment record, opinion evidence, and Plaintiff's statements regarding her functionality to determine the RFC as follows, in relevant part: "[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb, balance, crawl, kneel, stoop, and crouch.  She can occasionally push and pull with both upper extremities."  (ECF No. 14-2, pp. 16-25).

Given the objective medical and other evidence of record, Plaintiff certainly had severe impairments of disorder of the back, diabetes mellitus, and carpal tunnel syndrome, but the record does not support a finding that these impairments rendered Plaintiff disabled.  Contrary to Plaintiff's assertion, the record reveals that her back pain was no longer limiting following her successful surgery, that her diabetes mellitus was controlled by medication, and that she regained full use of her right hand following a carpal tunnel release procedure.  Thus, the ALJ properly incorporated many of Plaintiff's limitations into his RFC determination, and the record does not support additional limitations beyond those set out in the ALJ's RFC finding.

As to low back pain, the record demonstrates that Plaintiff responded well to treatment via a successful lumbar surgery such that this impairment was not disabling.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010).  Plaintiff underwent a fusion at L5-S1 of the lumbar spine in December 2018 following a regimen of epidural steroid injections, physical therapy, and medication.  (ECF No. 14-9, pp. 2, 17-18).  Prior to surgery, Plaintiff reported that her pain would last all day only if she did not take her medication.  (ECF No. 14-6, pp. 35-36).

While Plaintiff complained of worsening pain with extended sitting or walking prior to the

surgery (ECF No. 14-6, pp. 14-21, 35-36; ECF No. 14-9, p. 2), Plaintiff denied any low back pain during her follow-up appointment in January 2019 (ECF No. 14-9, p. 34). Following surgery, while an exam showed decreased sensation to touch on the left lower leg, Plaintiff demonstrated 5/5 strength in bilateral lower extremities with normal motor function and movement. *Id*. By April 2019, imaging of Plaintiff's lumbar spine showed properly positioned surgical hardware and grown bone fusion, not yet completely across the vertebral interspace. (ECF No. 14-10, pp. 32, 35). Notably, Plaintiff's surgeon advised her to return to work that did not require lifting more than 30 pounds, working up to heavier weight as tolerated, and to increase walking to the point of a slow jog. *Id*., pp. 32.

In his decision, the ALJ noted Plaintiff's history of back pain despite exams showing normal gait, negative straight leg raising, a full range of motion, and intact sensation and strength. (ECF No. 14-2, p. 23). He also considered Plaintiff's significant symptom relief following lumbar spine surgery resulting in a full range of motion in her back and intact strength and sensation in her lower extremities. *Id*. The ALJ also considered Plaintiff's reported functionality. *Id*., p. 21. He noted that Plaintiff's surgery restored her range of motion, and the treatment record did not support the extent of Plaintiff's alleged limitations regarding standing, sitting, kneeling, and lifting. *Id*., pp. 21-23. Nonetheless, the ALJ addressed these concerns by limiting Plaintiff to sedentary work with additional postural limitations. *Id*., p. 20.

Regarding Plaintiff's diabetes mellitus, the record indicates that her condition was controlled with medication and did not cause functional limitations. To prove disability, a claimant must show that her condition causes functional limitations. *See Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). Moreover, an impairment controlled by medication cannot be considered disabling. *Brown*, 611 F.3d at 955. Treatment records demonstrate that Plaintiff's blood sugar

substantially met goal levels, she had minimal signs signaling complication of diabetes, and she complied with prescriptions for Metformin and Novolog. (ECF No. 14-7, pp. 11-12). In September 2017, Plaintiff's A1C was consistently at target such that treatment providers advised her that she could stop insulin. *Id*., pp. 30-33. In 2019, Plaintiff was seen by endocrinology regarding her diabetes, and the exam showed no joint pain, no nocturia, no chest pains, no shortness of breath, no blurry vision, no foot ulcers, no edema or deformity, and no cervical adenopathy. (ECF No. 14-9, pp. 84-91). While an ultrasound showed a borderline enlarged thyroid gland with no focal nodules, Plaintiff demonstrated normal range of motion, normal reflexes, full orientation, and no distress. (*Id.*; ECF No. 14-10, pp. 75-77). Plaintiff was instructed to check her blood sugar twice a day, and her medications were adjusted. (ECF No. 14-9, p. 90; ECF No. 14-10, p. 75).

While Plaintiff was diagnosed with diabetic neuropathy, there is no evidence of treatment for rash or ulceration on Plaintiff's feet; rather, Plaintiff demonstrated good foot care practices with normal sensation and pulses bilaterally. (ECF No. 14-9, p. 95; ECF No. 14-10, pp. 39, 74-81). She could shop in stores weekly, cook light meals for herself and her family daily, complete light housework with help, generally had no problems with personal care, could drive a car and go out independently, and drive her son to and from school daily. (ECF No. 14-6, pp. 14-21). Plaintiff's hobbies included attending church weekly and going to dinners with family twice a week. *Id*. Plaintiff complied with treatment plans and took medications as prescribed to control her diabetes such that her activities of daily living were minimally impacted by its symptoms.

In his decision, the ALJ considered whether Plaintiff's diabetes mellitus affected relevant body systems through the presence of gangrene, retinopathy, coronary artery disease, and peripheral and sensorial neuropathies. (ECF No. 14-2, p. 20). The ALJ found no such evidence and further noted no evidence of persistent peripheral neuropathies with disorganization of motor

function despite prescribed treatment. *Id*. In addition, he noted no evidence of marked limitation in physical functioning with marked limitation in understanding, remembering, applying information, interacting with others, concentrating, persisting, maintaining pace, or adapting or managing oneself. *Id*. The ALJ further considered Plaintiff's history of fluctuating control of this disease, including periods with high A1C levels and periods during which medication and insulin stabilized A1C to goal levels with normal renal functioning. *Id*., p. 22. The ALJ considered that Plaintiff's diabetic foot exams showed no ulcerations, but rather, they showed normal pulses with monofilament sensory testing bilaterally. *Id*. Finally, the ALJ noted that Plaintiff's medications routinely appeared effective in controlling her diabetic symptoms. *Id*., pp. 20-22. Thus, the ALJ properly considered and accounted for Plaintiff's diabetes mellitus when setting out the RFC finding.

As for Plaintiff's carpal tunnel syndrome, medical evidence demonstrates that she responded well to treatment, via a successful carpal tunnel release procedure, to such extent that this impairment was not disabling. An alleged impairment is not disabling when it successfully responds to treatment. *Brown*, 611 F.3d at 955. The treatment record shows a history of right wrist pain resulting in a diagnosis of carpal tunnel syndrome and eventual carpal tunnel release procedure. (ECF No. 14-7, pp. 17-24). Following this procedure in December 2017, Plaintiff reported significant improvement in pain level and complete resolution of paresthesia. *Id*., p. 11. Both Plaintiff and her treatment provider expressed that they were happy with Plaintiff's progress, and the treatment provider expected Plaintiff to continue to improve. *Id*. Plaintiff later demonstrated a full range of motion in the right wrist, including the ability to make a full fist. (ECF No. 14-8, p. 71). While Plaintiff exhibited some inflammation in the ring finger, the treatment provider simply prescribed her a topical ointment. *Id*. After March 2018, treatment

notes no longer mention complaints of right wrist pain, swelling or weakness.

Thus, we find that the ALJ properly considered the medical and other evidence in the record and incorporated those limitations supported by that evidence when he determined the Plaintiff's RFC. As such, we find that substantial evidence supports the ALJ's RFC finding in this case.

### B. Step Five Determination

In her second issue, Plaintiff contends that she is not capable of performing the jobs identified in the ALJ's finding at step five. Specifically, she argues that the ALJ did not include the proper limitations in the hypothetical he posed to the vocational expert, and, therefore, the ALJ was not permitted to rely on the VE's testimony that there were jobs available to an individual like Plaintiff in the national economy. (ECF No. 19, pp. 15-16).

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Here, the ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. As discussed above, the ALJ's RFC finding is consistent with the medical and other evidence of record. Based on our previous conclusion that the ALJ's RFC findings were supported by substantial evidence, we find that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.

Additionally, Plaintiff asserts that the ALJ should have found her disabled under Rule § 201.17 of the GRIDS due to her alleged poor English language skills. (ECF No. 19, p. 16). We find this line of reasoning without merit. Contrary to Plaintiff's assertion, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.17 would not apply to Plaintiff. Rule § 201.17 states in relevant part

that an individual age 45-49 who is illiterate or unable to communicate in English with unskilled or no previous work experience should be found disabled. We find no evidence that Plaintiff had poor English language skills. While an interpreter was present at the administrative hearing, Plaintiff responded in English throughout much of her testimony. (ECF No. 14-2, pp. 38-51). In addition, Plaintiff completed handwritten and signed documents in English in support of her claim. (ECF No. 14-6, pp. 14-36). Finally, the medical record does not indicate that poor English skills impeded Plaintiff's ability to access treatment or impaired her functioning in any way. Thus, there is no evidence to support Plaintiff's argument that the ALJ erred in his step five finding based on Plaintiff's alleged poor English language skills.

Accordingly, the undersigned finds that the ALJ's step five finding is supported by substantial evidence.

## V.   Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of January 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE